J. L. ALLEN v. THE CAPE FEAR AND YADKIN VALLEY RAIL-
ROAD COMPANY and another.

*Demurrer ore tenus—Damages—Libel—Privileged Communica-
tions—Carriers—§ 1963 of The Code.*

1. A complaint set forth in substance: That defendant was a railroad
corporation and common carrier; that plaintiff was a merchant
and manufacturer, and a patron of defendant, receiving and ship-
ping freight over its line in the conduct of his business; that de-
fendant, through its Superintendent, caused a notice to be sent to
all its agents, instructing them to ship no freight to plaintiff, ex-
cept upon prepayment of all rates and charges for transportation,

and also requested a connecting railroad company to issue a like notice to its agents; that defendant railroad company was accustomed to receive and transport freight for all shippers without prepayment of charges, and up to the issuing of the above notice, plaintiff had been treated as all other customers of the defendant in that respect; that the notice applied to him alone, and was a discrimination against him; that upon its attention being called to said notice, defendant refused to change or modify it, though plaintiff so requested; that defendant *enforced* said order against plaintiff; that the issuing and enforcement of said order by defendant was, as plaintiff was advised and believed, wrongful and unlawful; that plaintiff, by reason of the said order, "wrongfully and unlawfully issued," and "wrongfully and unlawfully carried out and *enforced* and published against" him, was greatly damaged and injured in his business and in credit as a merchant, to-wit: in the sum of $10,000; *Held*, that the complaint failed to state facts sufficient to constitute a cause of action, in that: (1) It does not show that defendant, in fact, refused to receive or transport goods offered for shipment to plaintiff, or that any inconvenience, expense or delay was caused plaintiff, or that the order was acted on and *enforced to plaintiff's damage;* (2) If the order is claimed to be libellous, the complaint fails to charge that it was intended to injure plaintiff in his business; (3) It appears, on the face of the complaint, that the order was a privileged communication, and it is not alleged to have been made maliciously.

2. A common carrier has a right to demand the prepayment of charges for transportation, before receiving freight for shipment to one individual, although it may have an established custom to accept shipments to its other patrons without such prepayment. § 1963 of *The Code* recognizes this right.

CIVIL ACTION, tried before *Clark, J.,* at May Term, 1887, of CUMBERLAND Superior Court.

Judgment for defendant, dismissing the action, on the ground that the complaint did not state facts sufficient to constitute a cause of action. The point was raised by motion to dismiss, in the nature of a demurrer *ore tenus.* Plaintiff appealed.

The facts appear in the opinion.

*Messrs. W. A. Guthrie, T. H. Sutton* and *N. M. Ray*, for the plaintiff.

*Messrs. G. M. Rose* and *D. Rose*, for the defendants.

SMITH, C. J.   The plaintiff sued out a summons against the defendant company, on the 14th May, 1884, and upon the return of service, set out his cause of action in the following complaint filed :

1. The above named plaintiff complaining, says: That the above named defendant, " The Cape Fear & Yadkin Valley Railway Company," is, and was at the time hereinafter mentioned and referred to, a corporation, duly created and existing under and by virtue of the laws of North Carolina, and as such, was acting as a common carrier in the transportation of passengers and freight to and from the town of Fayetteville, in said county of Cumberland, and exercising and enjoying all the rights, powers and privileges appertaining to railway corporations as common carriers and warehousemen.

2. That the defendant James S. Morrison was at the time hereinafter mentioned and referred to, in the employment of said corporation defendant, as engineer and superintendent of said railway.

3. That the plaintiff, J. L. Allen, at the time hereinafter mentioned and referred to, was engaged in business in said town of Fayetteville, as a merchant, and dealer in furniture and other merchandise, and also as a manufacturer of furniture, and sash, blinds, doors and other building material.

4. That as such merchant, dealer and manufacturer, the plaintiff was a patron of said railway, and was accustomed to use the same in the transportation of goods and materials to his said place of business and manufactory, and also in the shipping of furniture, goods, sash, blinds, &c., from his store and factory in said town of Fayetteville, using the said road

as merchants, dealers and shippers of all kinds, were and are accustomed to do.

5. That on or about the 6th of May, 1884, the defendant James S. Morrison caused to be issued from his office an order as follows, viz.: "May 6th, 1884. To Agents: From this date you are instructed to ship no lumber or merchandise of any description to Mr. J. L. Allen, of Fayetteville, N. C., except when all freight and charges are paid. J. S. Morrison, Engineer and Superintendent," and caused the same to be sent to all the agents on the line of said railway, and also requested Maj. Winder, who is the Superintendent of the Raleigh & Augusta Air-Line Railroad, to give the same instructions to agents on his road. The said R. & A. A.-L. Railroad was at that time the only railroad that connected with the C. F. & Y. V. Railway, and delivered freight to or received freight from the C. F. & Y. V. Railway.

6. That said C. F. & Y. V. Railway Company was accustomed to receive and transport goods, merchandise and freight of all kinds, for all shippers, without requiring prepayment of freight and charges, and up to said May 6th, 1884, the plaintiff had been treated as all other customers in that respect; but the aforesaid order was a discrimination against the plaintiff specially, and was not made to apply to the other customers or patrons of said corporation generally.

7. That the said corporation defendant, upon its attention being called specially to said order by the plaintiff, refused to change or modify it, and said corporation has enforced said order against the plaintiff.

8. That the issuing and enforcement of said order by said J. S. Morrison and by the C. F. & Y. V. Railway Company, as plaintiff is advised and believes, was wrongful and unlawful.

9. That by reason of the aforesaid order, wrongfully and unlawfully issued by said J. S. Morrison, and wrongfully and unlawfully carried out and enforced and published

against the plaintiff by said J. S. Morrison, Chief Engineer and Superintendent, and by said C. F. & Y. V. Railway Company, the plaintiff has been greatly damaged and injured in his aforesaid business, and in his financial standing and credit as a merchant, dealer, and manufacturer, viz.: in the sum of ten thousand dollars. Whereupon the plaintiff demands judgment, etc.

The defendants put in their answer, in which they admit the material facts set out in the complaint, and among them, the issue of the order t ' the agents of the company to require payment of all goods consigned to the plaintiff, and this they justify on the ground of his repeated refusal and delay in paying freight bills when presented and the inconvenience and embarrassment resulting therefrom, and his disregard of notice given of the intended action of the company.

On defendants' motion to dismiss the action, the following judgment was rendered:

This cause coming on to be heard upon the complaint and answer, and after argument, it is now on motion of defendant's counsel, as upon a demurrer *ore tenus,* that the complaint does not state facts sufficient to constitute a cause of action, ordered and adjudged that this action be dismissed and that the defendant recover judgment against plaintiff for costs to be taxed by the Clerk.

From this ruling, and the judgment consequent on it, the plaintiff appealed.

On examining the complaint it will be seen that it does not show that the company, or any of its agents, ever, in fact, refused to receive or transport any goods offered for tranportation to the plaintiff, or that any inconvenience, expense or delay has been incurred by reason of the issue of the order, or that it has been acted on and enforced to the plaintiff's detriment or damage. The gravamen of the complaint is, that the order itself is personal, and discriminates between him and other persons who may wish to use the road for

100—26

transportation purposes, in requiring of him an advance payment when goods are sent, which is not required in the case of others; and the allegation is, that this is not allowable, because the company is a public corporation and a common carrier.   Still the fact remains, or at least the contrary is not averred, that the order is still without practical results of which the plaintiff can complain, and until it is put in force, it is no more than a declaration of intention, and not a cause of action.

In the argument before us it is insisted, and such seems to have been the object in view in framing the complaint, that the order is a libellous publication, hurtful to the plaintiff's credit as a business man, who has frequent occasion to use the road, and implies, at least, a charge of impaired credit, if not an approaching insolvency.   If this be a reasonable inference from the terms of the order, it should have been charged, in direct terms, that such was its meaning, so that, upon the face of the complaint, it could be determined whether a cause of action is set out, or it would be exposed to a demurrer.   But assuming this obstacle to be out of the way, the alleged libellous matter consists merely in a direction given by the company to its subordinates, for the regulation of their conduct, and a request given to the Superintendent of a connecting road which interchanges freight with the defendant company, and seems to be clearly, unless malicious, (and malice is not imputed) a privileged communication, proper in itself, and essential to the harmonious working on the road.

In *Wakefield* v. *Smithwick*, 4 Jones, 327, PEARSON, J., thus lays down the law upon this subject : " The defence, under the doctrine of privileged communication, is much broader, and much more favorable to the defendant," (referring to a plea of justification) " for if he succeeds in proving such a relation between himself and the person to whom the communication is made, as authorizes him to make it, the bur-

den is upon the plaintiff to prove that it was not made *bona fide*, in consequence of such relation, but out of malice, and that the existence of such relation was used as a mere cover for his malignant designs. When, however, the plaintiff shows that the matter communicated was false, the question of *bona fides* becomes an open one, and the defendant is called on for some explanation to meet the inference arising from the fact that he had communicated false information."

The plaintiff, a trader, employed an auctioneer to sell off his goods, and otherwise conducted himself in such a way that his creditors reasonably concluded that he had committed an act of bankruptcy. One of them sent the auctioneer a notice not to pay over the proceeds of the sale to the plaintiff, saying, "he having committed an act of bankruptcy," this was held to be a privileged communication, as being made in the honest defence of defendant's own interest. Odgers on Libel, 226, citing *Blackham* v. *Pugh*, 2 C. B., 611, and 15 L. J. C. P., 290.

Again, it may be asked wherein consists the alleged libellous matter? The order assuming it to have been issued in the interest of the company, real or supposed, to withdraw from the plaintiff a privilege which hitherto he had enjoyed in common with other patrons of the road, is but the exercise of the right to demand of every one, that upon all freight conveyed the charges must be paid in advance, and we do not perceive any legal wrong done to one to whom credit may not be given because it is given to others; it may be because of their punctuality in paying bills whenever they are presented. The statute recognizes the right, for it compels the company to furnish transportation, not generally, but "*on due payment of the freight or fare* legally authorized therefor." *The Code*,¡§ 1963. And, therefore, the exaction of payment of freight for goods consigned to the plaintiff is but the assertion of a right which might be, if, in fact, it be not enforced, against all dealers.

The complaint is fatally defective in failing to set out facts necessary to constitute a cause of action against the defendant, and departs most widely from any of the approved forms in use in civil suits for libellous publications.

We concur then in opinion with the Court, and affirm the judgment dismissing the action.

No error.                                        Affirmed.