BOHLINGER *v*. GERMANIA LIFE INSURANCE COMPANY.

Opinion delivered October 23, 1911.

1. LIBEL AND SLANDER—PRIVILEGED COMMUNICATION.—Privileged communications will not sustain an action for libel when they are made upon such occasions and under such circumstances as repel the legal inference of malice. (Page 483.)

2. SAME—COMMUNICATIONS BETWEEN PRINCIPAL AND AGENT.—Communications made by a principal to his agent, or by an agent to his principal, relative to the subject-matter of the business of the agency and containing information or giving direction relative thereto, are qualifiedly privileged, although they contain matter defamatory of a third person, if they are not malicious, and do not go beyond the subject-matter or purpose of the agency or business. (Page 483.)

3. SAME—PRIVILEGED COMMUNICATION—WHEN QUESTION FOR COURT.—
The question whether a communication complained of as being libelous
is one of qualified privilege is a question for the court where the facts
adduced in evidence are undisputed; and if the court decides that it is,
and no malice is shown, it is the duty of the court to direct a verdict
for the defendant. (Page 483.)

4. SAME—COMMUNICATION BETWEEN INSURANCE COMPANY AND AGENT.—
A communication between a life insurance company and its local agents
concerning the availability of plaintiff as a risk for life insurance and his
qualifications to be an insurance agent is one of qualified privilege.
(Page 484.)

5. SAME—WHEN PRIVILEGED CHARACTER NOT LOST.—A communication
between a life insurance company and its agents concerning a matter
within the scope of the latter's agency did not lose its privileged charac-
ter because it was incidentally brought to the notice of the stenographer
in the office of such agents. (Page 484.)

Appeal from Pulaski Circuit Court, Second Division;
F. Guy Fulk, Judge; affirmed.

J. W. Blackwood and J. W. Newman, for appellant.

1. The statements complained of in the letter to Powell
& Doyle are libelous per se. 18 Am. & Eng. Enc. of L. 861;
Kirby's Dig., § 1850; 18 Am. & Eng. Enc. of L. 909; Id.
941–942; 9 L. R. A., 621, note, and cases cited; 4 Ark. 110;
72 Ark. 421; 98 Fed. 222.

2. Appellee is liable to the same extent as if it were the
sole author of the statements. 18 Am. & Eng. Enc. of L.
1048; Id. 1013–1014; 169 Mass. 512; 25 Cyc. 369; 98 Fed.
222, 39 C. C. A. 19; Townshend, Slander and Libel, § 158;
6 Cush. 71; 33 Minn. 66–68, 21 N. W. 862; 55 Mich. 224,
21 N. W. 324, 54 Am. Rep. 372.

3. The communications were not privileged. 59 Fed.
540; 25 Cyc. 386; 18 Am. & Eng. Enc. of L. 1038; 152 Mo.
268; 52 S. W. 912, 47 L. R. A. 859; 173 Fed. 22, 97 C. C. A.
334; 84 Va. 890, 6 S. E. 474; 98 Fed. 222, 39 C. C. A. 19; 77
Ark. 64, 72.

4. The case should have gone to the jury. The court
should have instructed the jury as to the law in regard to qual-
i fied privilege, and left it to them to say how far the privilege
extended, and whether or not the privilege was forfeited or lost
by reason of its abuse. And whether or not all portions and
publications of the statements were privileged was a question
for the jury. 129 N. W. 674; 61 Minn. 137, 144, 63 N. W.

615; 134 S. W. 1093; 47 L. R. A. 483, 486; 130 Va. 504, 49
S. E. 644.   It was also for the jury to say, from the manner,
tone and surrounding circumstances, whether or not any
clearly privileged communication was malicious.   5 Words
and Phrases, 4299; *Id.* 4302; 18 Am. & Eng. Enc. of L.,
(2 ed.) 1050, 1051; 56 Ark. 94, 97.

*W. H. Pemberton,* for appellee.

1.   The communication was privileged.   25 Cyc. 398;
*Id.* 385; *Id.* 397; 23 Fla. 595; 3 So. 211; 18 Am. & Eng. Enc. of
L. 1038; 10 C. B. 583; 7 E. C. L. 583; 100 N. C. 397;   47
W. Va. 766, 35 S. E. 873; 121 Ga. 241, 48 S. E. 934; 45 Mich.
484;   44 S. W. 580, 18 Tex. Civ. App. 296;   78 Minn. 289, 79
Am. St. Rep. 387;   74 N. Y. S. 561, 68 App. Div. 141;   132
N. C. 172;   42 S. W. 607;   13 L. R. A. 655;   47 L. R. A. 483.

2.   The privilege was not lost because the communication
was seen by the confidential clerk and stenographer of Powell
& Doyle.   25 Cyc. 387;   50 N. J. L. 275;   13 Allen 239;   105
Mass. 395;   99 N. W. 847;   78 Minn. 289;   39 Fed. 672.

3.   Malice is an essential element of libel; and where
the communication is privileged, the presumption of malice
is rebutted and the burden of proving it is on the party alleg-
ing it.   47 L. R. A. 485;   111 Pa. 414, 56 Am. Rep. 274;   66
Mich. 166;   88 Me. 521, 34 Atl. 411;   116 Ga. 855, 43 S. E.
262;   25 Cyc. 412;   99 N. W. 847;   42 S. W. 607;   103 Va. 504,
49 S. E. 644;   47 W. Va. 766;   10 C. B. 583;   66 Mich. 166;   30
N. Y. 20;   25 Wend. 448.

4.   In directing a verdict for defendant, the court acted
within its province.   25 Cyc. 547;   164 Mo. 289;   93 S. W.
1033;   103 S. W. 374;   83 Ky. 375;   121 Mich. 536;   121 N. Y.
203;   116 N. Y. 211; Townshend, Slander and Libel, § 288.)

FRAUENTHAL, J.   This was an action instituted by A.
Bohlinger to recover damages for the alleged publication of
a libel.   The suit was originally brought against the Germania
Life Insurance Company, the Retail Credit Company and
John F. Clifford.   The cause abated as to the Retail Credit
Company for failure to obtain service of summons upon it,
and was dismissed on the motion of plaintiff as against the last-
named defendant.   The remaining defendant pleaded that
the alleged libel was a privileged communication.   Upon the

trial of the case, the court directed a verdict in favor of the defendant after all evidence had been introduced by both parties to the suit. From this action of the court the plaintiff has appealed.

The Germania Life Insurance Company was a foreign corporation, domiciled in the State of New York, and was engaged in the life insurance business. It had managers or general agents located in the large cities of various States of the Union, amongst whom were Powell & Doyle, who resided at Little Rock. In the prosecution of the business of the Life Insurance Company, these general agents had authority to employ soliciting agents, whose employment was subject to the approval of the Life Insurance Company at its principal office in the city of New York. In the conduct of its business, the Life Insurance Company had medical examiners, one of whom was Dr. Chester Jennings, who was located at Little Rock. The Retail Credit Company was engaged in the business of investigating the character and condition of various people, and especially of persons seeking life insurance and employment as insurance agents, and of furnishing reports thereon. The Credit Company had engaged said Clifford, who resided at Little Rock, as one of its agents to make such investigations and reports thereon.

About the 10th day of March, 1910, the defendant issued to plaintiff a life insurance policy for $5,000 upon application made by him, under the terms of which it was subject to cancellation within one year after its execution, in event any false statements had been made by said insured in his written application for the policy. About the same time the plaintiff was employed by Powell & Doyle as a soliciting agent for defendant, subject to the right of a cancellation of his appointment by said defendant or by said Powell & Doyle. The defendant had, for a number of years, employed said Retail Credit Company to investigate the character and condition of persons obtaining policies from it and of its agents and also to make reports thereon to it. The Retail Credit Company was doing this character of business throughout the United States, and was considered as perfectly reputable and reliable. The reports furnished by it were obtained by the Insurance Company in good faith and solely for the purpose of advising defendant relative to inqui-

ries made of it in order to properly conduct its life insurance business.  A few days after the issuance of the policy to plaintiff and his appointment as such soliciting agent, the defendant mailed to the Retail Credit Company two inquiries in reference to the plaintiff, one relating more especially to his condition as an insurance risk and the other to his qualifications as a life insurance agent.  In reply, the Retail Credit Company made to the defendant the following report relative to plaintiff: "Applicant was years ago a man of prominence; railroad official, and was on the road to swift advancement; careless and negligent conduct caused his downfall; not so many years ago he returned to the service as a telegrapher and caused a bad wreck by an oversight.  Has been writing insurance and running a small telegraph school on and off for years.  Years back he had the reputation of paying too much attention to his lady acquaintances, but nothing has been heard along these lines for the last few years.  Do not think he takes a drink very often, and know that he does not drink habitually.  Has a rather bloated look and peculiar puffs around his eyes.  Think this would prevent the risk being first-class.  He has a fine family, mostly grown, and their reputation is very good.  Has not been very prosperous in recent years; risk could not be classed more than good if successful physical examination can be passed."

On April 4, 1910, defendant mailed this report to its medical examiner, Dr. Jennings, in a letter which it marked "strictly confidential," and also to its agents, Powell & Doyle.  In the letter accompanying this report, it stated to Dr. Jennings that it had issued the policy to plaintiff, whom he had examined and recommended as a first-class risk, and, on account of his and its interest in the matter, it desired an expression of opinion regarding the statements in the report.  In its letter to Powell & Doyle, it stated that it was strictly confidential, and that it sent the report because of their interest in the matter and asking to hear from them relative thereto.  Dr. Jennings and Powell & Doyle wrote to defendant that the statements in the report were not true.  Acting upon these letters, defendant abandoned further inquiry relative to plaintiff and permitted his policy to remain in force and his appointment as soliciting agent to continue until the institution of this suit.  It appears that,

upon receipt of the above report, Powell & Doyle and Dr. Jennings showed it to plaintiff on account of their long acquaintance with him and warm friendship for him. But, according to the evidence, no other person saw the report except a stenographer in the office of Powell & Doyle, who only saw it incidentally. The evidence adduced upon the trial further proved that both Dr. Jennings and Powell & Doyle were interested in the matter set forth in said report. All the statements were material in determining whether or not plaintiff was a proper risk for life insurance, and Dr. Jennings testified that, if any of the statements in the report were true, he would not have recommended the acceptance of the plaintiff's application for life insurance if he had obtained the knowledge thereof before such recommendation, and would have advised its cancellation after its issuance upon obtaining such knowledge. The statements in the report were also material to Powell & Doyle in determining whether they would appoint and retain plaintiff as a soliciting agent. They testified that, if the statements had been true, they would not have appointed him, had they known of them, and would have cancelled his appointment after obtaining such knowledge.

Counsel for defendant does not contend that the statements made in said report concerning the plaintiff are not of a libelous character; nor does he contend that the sending of same by letter by defendant to its agents and medical examiner was not a publication thereof. The sole contention made by him why plaintiff is not entitled to recover is that the undisputed evidence shows that the statements in the report were made and sent on and in connection with an occasion which constituted it a privileged communication, for which an action for libel would not lie. Privileged communications are of two kinds; those which are absolutely privileged, and those which are qualifiedly privileged. An ingredient essential to constitute libel is malice; and communications alleged to be libelous are privileged, and will not sustain an action for libel, when they are made upon such occasions and under such circumstances as repel the legal inference of malice. A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has

a duty, and to a person having a corresponding interest or duty, although it contains matter which, without such privilege, would be actionable.    Upon such occasion and under such circumstances, although the matter communicated is defamatory and false, the law will not infer malice, but the existence thereof must be shown by some evidence beyond the falsity of the statements communicated.    Communications made by a principal to an agent, or by an agent to a principal, relative to the subject-matter of the business of the agency or employment and containing information or giving direction relative thereto, fall within the class of privileged communications, although they contain defamatory matter concerning a third person.    If the statements are published by one in good faith to another in order to protect his own interest or to protect the corresponding interest of the other in the matter in which both parties are concerned, then such statements are privileged when the subject-matter of the publication makes it reasonably necessary under the circumstances to accomplish the purpose desired.)  Newell on Defamations, Slander and Libel, (2 ed.) p. 388;  18 A. & E. Enc. Law, 1037;  *King* v. *Patterson*, 49 N. J. Law, 419;  *Rotholtz* v. *Dunkle*, 13 L. R. A. (N. J.) 655; *Holmes* v. *Clisby*, 121 Ga. 241;  *Montgomery* v. *Knox*, 23 Fla. 595;  *Allen* v. *R. R. Co.*, 100 N. C. 397;  *Briggs* v. *Garrett*, 111 Pa. 414.    But the communications containing defamatory statements thus made should not, in any event, go beyond what the occasion required.    If it is shown by the writing itself, or by evidence outside of the communication, that the occasion therefor was abused, or that the statements were not relevant to or went beyond the subject-matter or purpose of the agency or business, or that the statements were made from malice proved, then no protection will arise against the prosecution of an action for libel, although there may exist a common interest or duty of the parties between whom the communication passes.    Such intrinsic or extrinsic evidence would show a want of good faith, and would repel the inference that there was no malice.  *Farley* v. *Thalheimer,* 103 Va. 504;  *Wagner* v. *Scott*, 164 Mo. 289;  25 Cyc. 386.  (When the facts adduced in evidence are uncontroverted, it becomes the duty of the court to determine whether or not the communication complained of is privileged.    The great weight of authority supports

the doctrine that the court must decide whether the writing which is claimed to be libelous is one within a qualified privilege. If the court decides that it is, then it will go further and determine whether or not there is any testimony adduced upon the trial which tends to prove malice. If, from the uncontroverted testimony, there is no malice shown, then there exists no cause of action, and it becomes the duty of the court to direct a verdict for the defendant. Townshend on Libel and Slander, § 288; 25 Cyc. 547; *Ward* v. *Ward*, 47 W. Va. 766; *Brewer* v. *Chase*, 121 Mich. 536.

According to the uncontroverted testimony in the case at bar, the above report was mailed by defendant to its medical examiner and agents relative to a matter in which all were interested. It involved pecuniarily the business of the Life Insurance Company and of said agents and medical examiner. The medical examiner owed a duty to the company to pass upon its risks and to faithfully and correctly make recommendations thereon. All of the statements contained in the above report affected the plaintiff as an insurance risk. The State agents were pecuniarily interested in securing and retaining a soliciting agent of proper qualifications. All the statements in the report affected the plaintiff as to such qualifications. The Life Insurance Company was pecuniarily interested both in the risk covered by plaintiff's policy and in his qualifications as an agent. We do not think that there is any statement in this report which can be said to be unnecessary to accomplish the purpose of learning whether the plaintiff was a first-class risk for life insurance, and whether he possessed the proper qualifications for an insurance agent. Under the undisputed testimony adduced in this case, we are of the opinion that this report was sent by the defendant in perfect good faith, and that it was a privileged communication. This privilege was not lost because the report was incidentally brought to the notice of the stenographer in the office of Powell & Doyle. 25 Cyc. 387. It follows that the court was right in directing a verdict for the defendant. The judgment is accordingly affirmed.