## STROUD v. HARRIS et al.

(Circuit Court of Appeals, Eighth Circuit. March 26, 1925.)

No. 6744.

**1. Libel and slander ⊛45(2) — Letter from bondholder and stockholder to other bondholders concerning manager of corporation held qualifiedly privileged.**

Letter from bondholder and stockholder to other bondholders, written after foreclosure proceedings had been instituted, stating that manager of corporation was trying to turn the assets over to the bondholders, that assets were four or five times as great as the amount of the bonds, and that it was reasonable to believe that manager, as one of the largest bondholders, might so manage the affairs of new company as to deprive stockholders in new company of stock therein, until manager and his friends would own the factory, held qualifiedly privileged, and not libelous, in absence of actual malice.

**2. Libel and slander ⊛123(1)—Whether defendants authorized writing of alleged slanderous letter held for jury.**

In action by manager of corporation against certain stockholders for libel, based on letters written to other stockholders, question wheth-

er defendant stockholders authorized certain persons to write letters for them, and to attach their names thereto, held question of fact for jury.

**3. Libel and slander ⊛45(2)—Letters from some stockholders to others as to management and condition of corporation held qualifiedly privileged.**

Letters written by some stockholders to other stockholders concerning condition and management of corporation, and making charges against manager, held qualifiedly privileged.

**4. Libel and slander ⊛51(1)—Express malice essential to recovery, where communications are qualifiedly privileged.**

Where communications are qualifiedly privileged, they are relieved of presumption of malice attendant on defamatory statements therein contained; but where a libelous communication is made with express malice, even though it be qualifiedly privileged, the defamed party may recover, since qualified privilege is destroyed by express malice.

**5. Libel and slander ⊛123(8)—In suit based on qualifiedly privileged statements, express malice ordinarily for jury.**

In action for libel, based on qualifiedly privileged statements, the question of express malice is ordinarily for the jury.

**6. Libel and slander ⊛82—Innuendo alone not sufficient to identify person referred to.**

Innuendo alone is not sufficient to identify person referred to in alleged libelous letters.

**7. Libel and slander ⊛112(2)—Letters from stockholders to others, criticizing management of corporation by plaintiff, held insufficient to show want of good faith.**

In action for libel by manager of corporation against stockholders, letters written by defendant stockholders to other stockholders, criticizing management of corporation's affairs, held insufficient to show want of good faith in writing and sending letters, or authorizing letters to be written and sent.

**8. Libel and slander ⊛112(2)—Evidence held insufficient to prove connection between certain defendants and alleged libelous letters.**

In action by manager of corporation against certain stockholders for libel, based on letters written to other stockholders, evidence held insufficient to connect certain of the defendants with certain letters, or to show a conspiracy between such defendants and writer of such letters to libel plaintiff.

In Error to the District Court of the United States for the Western District of Arkansas; Frank A. Youmans, Judge.

Action by H. L. Stroud against J. R. Harris and others. To review an adverse judgment, plaintiff brings error. Affirmed.

Malcolm E. Rosser, of Muskogee, Okl., and J. B. McDonough, of Ft. Smith, Ark., for plaintiff in error.

N. F. Lamb, of Jonesboro, Ark. (Lamb & Frierson, of Jonesboro, Ark., and H. L. Pearson, of Fayetteville, Ark., on the brief), for defendants in error.

Before STONE and KENYON, Circuit Judges, and SCOTT, District Judge.

KENYON, Circuit Judge. This is a writ of error to reverse a judgment of the District Court of the United States for the Western District of Arkansas. Plaintiff in error was plaintiff in the trial court, and defendants in error were defendants there. Parties will be designated as in the trial court. The action was against a number of defendants, viz. J. R. Harris, G. W. Culberhouse, W. Higginbotham, R. L. Muse, H. A. Stroud, H. H. McAdams, and Dan L. Jones. In the original complaint, C. E. Harris, Leroy C. Norris, and L. E. Watson were also made defendants. At the commencement of the trial the case was dismissed as to C. E. Harris and L. E. Watson. The court directed a verdict as to defendant Norris, and no exception was taken thereto. No notice was ever served on Dan L. Jones, and no appearance entered for him. At the close of plaintiff's testimony the court sustained a motion to direct a verdict in favor of defendants J. R. Harris, R. L. Muse, H. A. Stroud, and H. H. McAdams. At the close of all the testimony the court sustained a motion to direct a verdict in favor of the remaining defendants, G. W. Culberhouse and W. Higginbotham.

The action was to recover damages for alleged libel, plaintiff claiming that defendants entered into a conspiracy to injure and libel him. Briefly the facts giving rise to the action are these:

In January, 1921, plaintiff was appointed general manager of the Oklahoma Auto Manufacturing Company. He was a stockholder at the time and had been a director, and had a good deal to do with the Auto Company's acquisition of certain property of the J. B. Woods Plow Company. At the time he became general manager the company was in financial distress, being indebted in approximately the sum of $400,000. A petition in bankruptcy was filed, and plaintiff was appointed receiver March 10, 1921. He was discharged as receiver August 29, 1921. Prior to his becoming general manager, a mortgage had been executed on the property for the purpose of securing bonds which were to be issued to realize funds with which to liquidate the debts. This bond issue was to be in the sum of $150,000. Plaintiff made

some composition agreement with the creditors to pay them 25 per cent. on the dollar. It was impossible to sell the bonds on the general market. Plaintiff thereupon urged the stockholders to subscribe therefor, which they did, to the extent of about $100,000, plaintiff himself taking $25,000 thereof. The deed of trust on the property to secure the payment of the bonds provided for a sinking fund beginning January 1, 1922, in the sum of $5,000 on that date, $10,000 to be paid into the sinking fund every six months. Interest on the bonds was payable January 1st and July 1st of each year. The sinking fund and the interest not having been taken care of, a number of the bondholders held a meeting at Muskogee in January, 1922, at which time it was determined that the deed of trust should be foreclosed. The suit to foreclose the same was filed shortly thereafter. Trouble arose between some of the defendants and the plaintiff, and much discontent apparently with plaintiff's management of the affairs of the company was manifest; likewise much feeling over the foreclosure proceeding. The trouble brewing between certain of the defendants and plaintiff resulted in plaintiff being relieved of his position as general manager of the Oklahoma Auto Manufacturing Company March 22, 1922.

Plaintiff claims, and it is the basis of this suit, that after the foreclosure suit was commenced a number of letters were written by the defendants, acting together, which were libelous in their nature, and which resulted in great injury to him. The first letter complained of is of date March 8, 1922, which is addressed to the stockholders of the Oklahoma Auto Manufacturing Company, signed by G. W. Culberhouse, W. Higginbotham, A. D. Anderson, Committee. The part which is claimed to be libelous, is the following: "In our opinion, if some one had been in charge of the company that really wanted to meet this payment, it would have been an easy matter to have raised this amount of money from the sale of trucks. We would only have to sell four trucks to raise that small sum. We have been told that Mr. Stroud owns about one-fifth of the bonds, so, as the old saying goes, where your money is, your heart is there also." It is claimed this charges a violation of his trust as general manager.

The second letter complained of is of date March 10, 1922, signed by defendant H. H. McAdams, who at the time was president of the First National Bank of Jonesboro, Ark. As indicative of the character of the

letter, we quote the following from pages 70 and 71 of the record:

"The First National Bank, Jonesboro, Arkansas.

"March 10, 1922.

"To the Bondholders of the O. K. Truck Company:

"I am a bondholder, also a stockholder, in the O. K. Truck Company. From the best information that I am able to obtain in regard to the affairs of the company, it seems that an effort is being made by the present manager, H. L. Stroud, to turn the assets of this company over to the bondholders without any consideration of the rights of the stockholders. In fact, he made the statement before a group of stockholders that he wanted the bondholders to have the factory, and would not be willing to invest a dollar in bonds unless he felt sure that they would get it.

"I am opposed to this. In the first place it is not right. Many poor people and even widows invested every dollar they could spare in this company with the hope of making money from their investment, and are not able to stand such a loss. All who invested in stock invested for that purpose. The stockholders have not had an opportunity since the settlement was made with the creditors to meet the payments on these bonds since the gentleman who is so anxious to have the bondholders own the assets of the company has had the management of the company's affairs. The assets of the company are four or five times as great as the amount of the bonds, and it is unfair to take this amount of money from those stockholders who were not able to buy bonds and give it to the few more fortunate ones who were able to buy bonds. We bondholders are entitled to the amount invested in bonds and interest on the same, and that is all we are entitled to as bondholders. The remainder of the company assets belong to the stockholders. * * * As he is one of the largest bondholders, it is reasonable to believe that he might so manage the affairs of the new company as to make it necessary to issue bonds again, and deprive those of us who would be stockholders in this new company of our stock in it, just as he is now trying to deprive the stockholders of their present stock, and so on until he and his closest friends own the factory."

The next letter complained of is that of March 13, 1922, signed by Culberhouse, Higginbotham, and A. D. Anderson. The parts of this letter complained of are the following:

"Dr. H. A. Stroud, of Jonesboro, Ark., wants the stockholders to know that he is in no way related to H. L. Stroud, the present manager of the Company. Be careful as to who you give a proxy to. Be sure how they stand. Some of the directors have betrayed us once. So take no more chances."

The next letter is that of March 14, 1922, addressed to the stockholders of the Oklahoma Auto Manufacturing Company, and it bears the signature of Higginbotham, Culberhouse, and Anderson. (Anderson was not a party in the case.) We refer to certain portions thereof, including the parts complained of, viz.:

"Jonesboro, Ark., March 14, 1922.

"To the Stockholders of the Oklahoma Auto Mfg. Co.:

"In our letter of March 8 we told you that if there was not a meeting of the stockholders at once, and a board of directors elected that would look after the interest of the stockholders, that we would lose our entire investment in this company.

"We are sorry that we now have to inform you that H. L. Stroud and his crowd, who want to own the Oklahoma Auto Mfg. Co., have filed suit to foreclose on their bonds and take charge of the factory. If Mr. Stroud could get by with this suit and succeed in getting the company turned over to the bondholders, and in another year's time give another simple twist of the wrist and squeeze out the little bondholders, he would make more money than he could make at anything else in a thousand years. He can easily figure that if he can succeed in closing us out that he will clean up around a half million dollars. Are you willing for him to sell us out this way? * * *

"We owe the bondholders $4,000 interest that should have been paid January 1st. We have sold enough trucks in one week since January 1st to have paid three times the amount of interest due January 1st. Now, why didn't H. L. Stroud pay the bondholders their interests? He can't say that he did not have the money and tell the truth, for we know better; but instead of paying the bondholders their interests, as he should have done, we are informed that he bought a car load of engines that we did not need. Some dodging around to avoid paying this interest, isn't it?

"We are willing to put up the money to pay the bondholders the amount we justly owe and should have paid January 1st, but we will not put up a dime in H. L. Stroud's hands. He might buy some more engines with it. From the way he buys

engines, you can see that he intends to stay in the truck business."

The next letter is that of March 15th, which is signed by Culberhouse, Higginbotham, and Anderson, in which letter occurs this:

"Jonesboro, Ark., March 15, 1922.

"To the Stockholders of the O. K. Truck Company:

" * * * We have been told that H. L. Stroud went to a certain insurance man in Muskogee and offered to insure the company for $100,000, provided the agent would split his commission with him. The insurance agent refused to split the commission with Stroud, so, unless Stroud could make some money out of the deal for himself, he would not have the company's property insured. * * *

"We are advised that he is getting out a letter to the stockholders to-day. We do not know what his letter will contain, but, whatever it is, we will reply to it as soon as we get a copy of his letter; so don't send your proxy to him, unless you want to lose your stock, for he is the man that is taking it away from you. We have been rather easy on him in our former letters.

"If you have not already sent your proxy to R. L. Muse, of Jonesboro, Ark., either send it to him to-day or send it to W. R. Lantz, Muskogee, Okl. Mr. Lantz is president of the company and is absolutely all right. He is in favor of a square deal to everybody. He wants to pay the bondholders their interest, like an honest man should do, and protect the stockholders."

Another letter was sent out April 27, 1922, addressed to the stockholders of the Oklahoma Auto Manufacturing Company, signed by Higginbotham, Culberhouse, and Anderson, which does not seem to be complained of. These letters were sent only to the stockholders of the Oklahoma Auto Manufacturing Company. The balance of the letters claimed to be libelous were sent at a later period to bondholders and stockholders, and were not signed by any of the defendants, except Jones. The court held that the letters of March 8th, March 13th, March 14th, and March 15th, which purported to be signed by Culberhouse, Higginbotham, and Anderson, were privileged, and that there was no evidence of express malice in writing or sending them. It further held that the letter of March 10th, written by H. H. McAdams, was privileged, and that there was no evidence of express malice as to that, and further held that as to the letters commencing September 22, 1922, and

following on through to January, 1923, there was no evidence to show that defendants had anything to do with them, or were responsible therefor. It is the claim of plaintiff that defendants acted together with a malicious, common interest and purpose in writing the letters to defame and injure the plaintiff; that the letters were libelous on their face and were not privileged.

[1] The action of the court at the conclusion of the plaintiff's evidence in sustaining a motion to direct a verdict as to J. R. Harris, R. L. Muse, and Dr. H. A. Stroud was entirely justified. There is no substantial evidence in the record that would warrant submitting the case as to them to the jury. The action of the court in sustaining the motion for verdict as to defendant H. H. McAdams raises questions as to the contents of the one letter written by him. We are satisfied the court was entirely correct in its action as to this defendant. McAdams, as one of the bondholders and stockholders, was writing to the other bondholders. The statements he made in the letter were not only for the purpose of protecting his own interests, but their interests also, and show that he was attempting to protect the stockholders as well. Some of the statements may be slightly exaggerated, especially the one as to assets of the company; but the evidence is sufficient to show that he was stating what he honestly believed to be true, and what, from statements made to him by parties in whom he had confidence, he had reasonable ground to believe was true. The letter was a qualifiedly privileged communication, and there is nothing to show that McAdams was actuated by any malice whatever. Unless McAdams were one of a conspiracy to defame (which we later discuss), the letter was not sufficient to sustain a verdict against him.

[2] The real and only doubtful question here, we think, is as to defendants Culberhouse and Higginbotham. The letters upon which the action is predicated naturally divide themselves into two classes. The one includes those written prior to March 22, 1922, when plaintiff ceased to be the general manager of the company. These letters, with the exception of the McAdams letter, purport to be signed by Higginbotham, Culberhouse, and Anderson. The letters written after that time, with the exception of the letter of April 27, 1922, are signed by the Oklahoma Auto Manufacturing Company, by Dan L. Jones, superintendent, or Urie D. Harris, secretary. Jones, it must be remembered, while a party to this action, was

not served with notice. In the first group of letters, that of March 8, 1922, is the only one which defendants Culberhouse and Higginbotham admit responsibility for. They permitted Jones to write the letter and attach their names. They claim in evidence that the letters of March 13th, 14th, and 15th, to which their names are attached, were written by Jones with no authority from them, and with no knowledge upon their part. In the original answer filed to the amended complaint it was admitted that Culberhouse and Higginbotham wrote these letters. An amended answer alleged that such admission was an inadvertence by counsel and untrue. However, whether they were responsible for any of the letters to which their names were signed (excepting the letter of March 8th, which is admitted), we think, under all the circumstances, would be a question of fact for the jury, and consequently, for the purpose of this opinion as to the justification for an instructed verdict, we consider these defendants as responsible therefor.

[3] That these letters written in March (being communications from the stockholders of a corporation to other stockholders concerning matters in which both had an interest) were qualifiedly privileged is well established by the authorities. The law on this subject is not intricate, and there is nothing to be gained in extended comment, or citation of authorities. We refer, however, to a few text-writers and cases where the principles of law applicable are announced:

17 Ruling Case Law, § 88, states some of the propositions very clearly as follows: "A communication made in good faith on any subject-matter in which the person communicating has an interest, or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, even though it contains matter which, without this privilege, would be actionable, and although the duty is not a legal one, but only a moral or social duty of imperfect obligation. * * * A publication loses its character as privileged, and is actionable, on proof of actual malice, or, at least, such gross disregard of the rights of the person injured as is equivalent to malice in fact."

Newell, Slander and Libel (4th Ed.) § 432: "Parties Having a Common Interest. In those cases where one person has an interest in the subject-matter of the communication, and the person to whom the communication is made has a corresponding interest, every communication honestly made in order to protect such common interest is privileged by reason of the occasion"

This court discussed the matter in Wise v. Brotherhood of Locomotive Firemen and Enginemen, 252 F. 961, 963, 164 C. C. A. 469, 471, and said: "A communication is privileged if made bona fide by one who has an interest in the subject-matter to one who also has an interest in it or stands in such a relation that it is a reasonable duty, or is proper, for the writer to give the information." See, also, National Cash Register Co. v. Salling, 173 F. 22, 97 C. C. A. 334; Massee v. Williams, 207 F. 222, 124 C. C. A. 492; Polk v. Missouri Pac. R. Co. et al., 156 Ark. 84, 245 S. W. 186, 29 A. L. R. 220; Bohlinger v. Germania Life Ins. Co., 100 Ark. 477, 140 S. W. 257, 36 L. R. A. (N. S.) 449, Ann. Cas. 1913C, 613; R. A. Holmes v. Royal Fraternal Union, 222 Mo. 556, 121 S. W. 100, 26 L. R. A. (N. S.) 1080; Finley v. Steele et al., 159 Mo. 299, 60 S. W. 108, 52 L. R. A. 852; La Plant v. Hyman et al., 66 Colo. 128, 180 P. 83; Chambers v. Leiser, 43 Wash. 285, 86 P. 627, 10 Ann. Cas. 270; Ashcroft v. Hammond, 197 N. Y. 488, 90 N. E. 1117; Ross v. Ward, 14 S. D. 240, 85 N. W. 182, 86 Am. St. Rep. 746; 36 Corpus Juris, § 205.

[4] Where communications are qualifiedly privileged they are relieved of the presumption of malice attendant upon defamatory statements therein contained; but where a libelous communication is made with express malice, even though it be qualifiedly privileged, the defamed party may recover. Qualified privilege is destroyed by express malice.

Townsend on Slander and Libel (4th Ed.) says, at page 321: "Few rules of law are of greater practical importance than that which requires proof of express malice, where the words are spoken under circumstances which make the communication privileged. The malice required to deprive communications of this sort of the protection arising out of the occasion of the speaking of the words, must be such as to induce the court, or any reasonable person, to draw the inference that the occasion has been taken advantage of to give utterance to an unfounded charge. Privileged communications comprehend all statements made bona fide in performance of a duty, or with a fair and reasonable purpose of protecting the interest of the person making them, or the interest of the person to whom they are made." Wise v. Brotherhood of Locomotive Firemen and Enginemen, 252 F. 961, 164 C. C. A. 469; White v. Nicholls et al., 3 How. 266,

11 L. Ed. 591; Nalle v. Oyster, 230 U. S. 165, 33 S. Ct. 1043, 57 L. Ed. 1439; James Hollenbeck v. J. M. Ristine, 105 Iowa, 488, 75 N. W. 355, 67 Am. St. Rep. 306; Massee v. Williams, 207 F. 222, 124 C. C. A. 492. In White v. Nicholls et al., 3 How. 266, 11 L. Ed. 591, the Supreme Court held that falsehood and absence of probable cause amount to proof of malice. See, also, Post Pub. Co. v. Hallam, 59 F. 530, 8 C. C. A. 201.

[5, 6] The letters written in March being qualifiedly privileged, the decisive question here is whether the evidence was sufficient to warrant submitting the question of express malice as to the defendants to the jury. Ordinarily the question of malice is for the jury, but, if the facts are not sufficient in the judgment of the court to warrant the jury in finding express malice, it would be its duty to instruct a verdict. Outside of the letters it could not well be claimed that the evidence shows such personal feeling upon the part of defendants, excepting Jones, as to warrant a jury finding of express malice. Any such finding, therefore, would have to be based upon the letters. If the defendants honestly believed the statements made therein, and had reason to so believe—in other words, if they acted in good faith and did not use the privileged occasion as an opportunity to libel the plaintiff—there would be nothing on which a jury could base the charge of malice.

This leads us to an analysis of these letters. In the letter of March 8th, which it is admitted the defendants Culberhouse and Higginbotham authorized, the question of payment of interest on the bonds was discussed. It was stated that, if some one had been in charge of the company that really wanted to meet the payments, it would have been an easy matter to have raised that amount of money from the sale of trucks. This is a mere criticism of the business methods of the plaintiff. The statement that they had been told that plaintiff owned one-fifth of the bonds was an assertion of what the evidence shows to be practically a fact. The language, "where your money is, your heart is there also," can in this day and age hardly be considered so false as to raise any implication of malice. As to the letter of March 13, 1922, purporting to be signed by the same defendants, but whose names the evidence shows were signed by Jones without authority, the only references that are relied on to show malice are that Dr. Stroud "wants the stockholders to know that he is in no way related to H. L. Stroud, the pres-

ent manager of the company." This may not be a delicate or pleasant reference, but there is nothing libelous in it. The phrase, "some of the directors have betrayed us once, so take no more chances," does not specify the plaintiff. We find in the record, in one of the questions asked of a witness, the statement by plaintiff's counsel that it was conceded that the foregoing language was intended to apply to plaintiff; but we find no such concession on the part of defendants or their counsel. Innuendo alone is not sufficient to make certain the identity of the person. Harris v. Santa Fé Townsite Co., 58 Tex. Civ. App. 506, 125 S. W. 77; McCallum v. Lambie, 145 Mass. 234, 13 N. E. 899; Newell on Slander and Libel, § 214.

The letter of March 14, 1922, purporting to be signed by the same defendants, refers to the suit to foreclose on the bond and plaintiff's efforts to turn the property to the bondholders, and refers to plaintiff not paying the interest on the bonds, and also states they will not put a dime in plaintiff's hands; that he might buy more engines with it. The reference to the purchase of engines is a criticism of plaintiff's method of doing business. Plaintiff's bookkeeper, Robertson, had complained of his buying a carload of engines; said complaint being made to Dan L. Jones. The letter shows that defendant had knowledge of the communication to Jones, and believed that plaintiff had purchased too many engines. The letter of March 15th, complained of, has in it a reference to Stroud's insurance matters, stating that he tried to secure a split of the commission of the insurance agent for insurance on the property. There certainly is sufficient evidence in this case to warrant a belief on the part of defendants that the statement was true. Outside of that, there is nothing in the letter from which any malice could be implied. The letter of April 27, 1922, purporting to be signed by these same defendants, has nothing in it that is complained of.

Taking therefore these letters, and placing responsibility, not only for the letter of March 8th, but for the other letters written in March, upon defendants Culberhouse and Higginbotham, do they show, not only false statements, but absence of any probable cause therefor? Defendants were stockholders and bondholders in this Automobile Company. Matters had come to their knowledge which they thought should be imparted to other stockholders and bondholders. These letters were addressed to the stockholders and were sent out to them. They had

a right, within reasonable bounds, to acquaint the stockholders with the situation, and to advise them honestly and in good faith as to the facts which had come to their knowledge.

[7] While the letters indicate some feeling and indignation, such naturally would exist if they believed plaintiff was endeavoring to favor the bondholders at the expense of the stockholders, and that plaintiff did not intend to have the interest on the bonds paid, and so assist in bringing about the control of the company by the bondholders. We do not say that plaintiff intended these things, but the evidence is sufficient to show that defendants had reasonable ground to believe that there was such an intention. It is a fair presumption from the record that plaintiff, as receiver and manager, had collected and handled over $113,000 of the company's money, exclusive of amount received from sale of bonds. It would seem that out of this there could have been some interest payments on the bonds. The statements complained of in these letters, which were written in March, are not, in our judgment, sufficient, under all the circumstances disclosed by the record, to show want of good faith on the part of defendants Culberhouse and Higginbotham in writing and sending them to the stockholders, or authorizing the same to be done.

[8] As to the letters written subsequent to March 22, 1922, signed by Jones, representing the Oklahoma Auto Manufacturing Company, and by Harris, as secretary of the company, there is little doubt that, while they are in the nature of qualifiedly privileged communications, they evidence sufficient ire and contain such exaggerated statements and conclusions as to make the question of express malice for a jury as to defendant Jones. The other defendants, however, as to these letters, are responsible only if Jones were acting for them, or if there were a conspiracy of which they were a part, as claimed by plaintiff, to defame and libel him. It may be noted that some of the Jones letters are evidently in reply to some of the letters written by the plaintiff. Their correspondence, to characterize it mildly, was animated, and did not evidence any particular regard for one another. The evidence was totally insufficient to show a conspiracy between Jones and the other defendants to libel the plaintiff, and in the absence of conspiracy, and in the absence of Jones acting for the other defendants, they cannot be charged with responsibility for these later letters. The mere fact that some of these defendants lived in the same town, or that they were stockholders in the same company, and that they were evidently acting together to secure the removal of plaintiff as general manager, is not sufficient to establish a conspiracy to libel.

We are satisfied that the present defendants were not responsible for the letters complained of written after March 22, 1922. They were the personal work of Jones. We are also satisfied that defendants Stroud, J. R. Harris, Muse, and Norris had no connection with the writing of any of the letters; that the letters written prior to March 22d by defendants Culberhouse and Higginbotham jointly, and also the one written by McAdams, were qualifiedly privileged; that the statements of said letters were made by defendants in the honest belief that they were true, and for the purpose of protecting their own interests and those of the stockholders, and in the McAdams letters the bondholders. Hence, giving the most favorable consideration possible to plaintiff's evidence, the court was justified on the whole record in directing a verdict for all the defendants.

The case is affirmed.