Miryana NAVORRO-MONZO *v.* L. Milton HUGHES

88-170 763 S.W.2d 635

Supreme Court of Arkansas
Opinion delivered January 17, 1989
[Rehearing denied February 20, 1989.*]

*Purtle, J., not participating.

446

*Thurman Ragar, Jr.*, for appellant.

*Friday, Eldredge & Clark*, by: *William M. Griffin III*, for appellee.

JOHN I. PURTLE, Justice. The trial court granted a summary judgment in favor of the appellee on the appellant's complaint which accused the appellee of slander and interference with a business expectancy. The appellant's four arguments for reversal are that: (1) the court erred in dismissing the defamation action because malice had been alleged, and if proven at trial, this would destroy the qualified privilege which the appellee enjoyed; (2) the court erred in failing to hold that malice must be presumed from the statements presented in the complaint; (3) the court erred in dismissing the claim for damages for interference with a contractual relation; and (4) the court erred in granting summary judgment because there were disputed issues of fact. We hold that the pleadings, affidavits, and other supporting documents did not state facts from which "malice" could be found. Therefore, the

qualified immunity enjoyed by the appellee under the circumstances was not destroyed. The judgment by the trial court is affirmed.

The appellant and appellee, together with two other persons, were the directors of Le Metro Cafe Continental, Inc., an Arkansas corporation which operated a restaurant in the Union Station in Pine Bluff, Arkansas. The appellant was the chef and manager of the restaurant, and the appellee was the president of the corporation.

The corporation grew out of an arrangement whereby the appellant furnished some equipment as well as her expertise in the business, and the other persons furnished the capital for the venture. Things did not go well, and the business was losing money. During a board meeting, attended only by the board members and the corporation's attorney, the appellee stated that the corporation's accountant had informed him that the taxes had not been paid and that criminal charges were going to be filed. He further stated that the directors had given the appellant $100,000 a few weeks earlier and that she had mishandled these funds, not having paid the rent and the taxes with the money.

█ █ We first discuss the appellant's last two arguments for reversal: interference with a contractual relation and the granting of a summary judgment. We agree with appellant's statement that a successful claim for interference with a contractual relation must allege and prove that a third person either did not enter into or failed to continue a contractual relationship with the claimant as a result of the unauthorized conduct of the defendant. According to the allegations in the complaint, the only contractual relationship the appellant enjoyed was her employment with the now-defunct corporation. Both the appellant and appellee were directors of the corporation. (Appellee owned only one-fourth of the shares of the corporation; therefore he did not own controlling interest as argued by the appellant.) An action for tortious interference with a contractual relationship is based upon a defendant's conduct toward a third party. There was no third party in the present case. See *Mason* v. *Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969). For reasons stated above and below we hold that the trial court did not err in granting summary judgment in favor of the appellee.

■■ For the purpose of considering the motion for summary judgment, the appellee concedes that his statements about appellant were false. According to Black's Law Dictionary, Fifth Edition (1979), slander is the speaking of false and malicious words concerning another, whereby injury results to his reputation. Black's defines publication of slander as "the act of making the defamatory matter known publicly, of disseminating it, or communicating it to one or more persons." According to the Restatement of Torts, publication consists of communicating slanderous matter intentionally or by a negligent act to one other than the person defamed. Restatement of Torts, Second, § 577 (1977). Although the publication of defamatory matter, intentionally or through negligence, may give rise to a tort action, the defamatory statement may be protected by a qualified privilege.

The appellant concedes that communications between members of the board of directors of a corporation are qualifiedly privileged. She argues, however, that when malice is demonstrated, the publication loses the protection of this privilege. Therefore the question to be decided by this court is whether the qualified privilege enjoyed by the appellee was lost because of malice on his part.

The appellee argues that there must be publication before a slanderous statement is actionable. He contends that there was no publication in the present case.

■ The basis of liability for slander is the publication. Publication has been defined by Prosser as follows:

> Since the interest protected is that of reputation, it is essential to tort liability for either libel or slander that the defamation be communicated to someone other than persons defamed. This element of communication is given the technical name of "publication," but this does not mean that it must be printed or written; it may be oral, or conveyed by means of gestures, or the exhibition of a picture or statue.
>
> . . .
>
> There may be publication to any third person. It may be made to a member of the plaintiff's family, including his wife, or to the plaintiff's agent or employee. It may be made to the defendant's own agent, employee or officer, even

where the defendant is a corporation. The dictation of defamatory matter to a stenographer generally is regarded as sufficient publication, although it may be privileged. A few courts, with the tendency to confuse the question of publication with that of privilege, have held that it is not, regarding dictation as an indispensable method in modern business transactions, and therefore merely equivalent to the defendant's own writing.

Prosser and Keeton on Torts, Fifth Edition (1984), § 113.

Alternatively to claiming there was no publication, the appellee (defendant below) argues that the statements were qualifiedly privileged. Historically, the common law recognized situations in which the interest of a party making such an utterance is sufficiently justified to allow for some mistakes. Admittedly finding it difficult to reduce such exceptions to a single statement, Professor Prosser quoted Baron Parke to the effect that the publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." See *Dillard* v. *Felton*, infra, and Restatement of Torts, Second, § 595.

In determining whether an utterance is actionable, it is necessary to examine the interests of the publisher and the recipients of the communication. A qualified or conditional privilege frequently arises when a common interest is involved. On the subject of common interest, Prosser has observed:

A conditional privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it. Frequently in such cases there is a legal, as well a moral obligation to speak. This is most obvious, of course, in the case of those who have entered upon or are considering business dealings with one another, or where the parties are members of a group with a common pecuniary interest, as where officers, agents or employees of a business organization communicate with stockholders, or with other employees or branch offices about the affairs of the organization itself, or taxpayers discuss the management of public funds, or an association

of property owners the desirability of a prospective pur-
chaser, or creditors the affairs of a common debtor.

Prosser, § 115.

■■ It is a condition and qualification of the privilege that
the utterance must be exercised in a reasonable manner and for a
proper purpose. Therefore, if the person making the statement
steps outside the bounds of the privilege or abuses the privilege,
the qualified privilege is lost. The immunity does not extend to a
publication of irrelevant defamatory statements which have no
relation to the interest entitled to protection. *Hines* v. *Shumaker*,
52 So. 705 (Miss. 1910). The qualified privilege is lost if the
publication is not made for the purpose of furthering the common
interest. Restatement of Torts, Second, § 603.

■■ The arguments of both the appellant and appellee in
this case largely concern the concept of "malice." The authorities
are quite clear that the qualified privilege is forfeited if it is
abused; i.e., the privilege will be lost if the defendant publishes the
defamatory statement with "malice." In this sense the word
"malice" means something more than the fictitious "legal mal-
ice" which is "implied" in order to impose strict liability in a case
of unprivileged defamation. On the other hand, it may mean
something less than "express malice," or ill will. See Prosser, §
115. On this subject Prosser has commented:

> [I]t is the better and perhaps more generally accepted view
> that the mere existence of such ill will does not necessarily
> defeat the privilege. If the privilege is otherwise estab-
> lished by the occasion and a proper purpose, the addition of
> the fact that the defendant feels indignation and resent-
> ment towards the plaintiff and enjoys defaming him will
> not always forfeit it. Perhaps the statement which best fits
> the decided cases is that the court will look to the primary
> motive or purpose by which the defendant apparently is
> inspired.

■ The appellant relies primarily on the case of
*Bohlinger* v. *Germania Life Insurance Company*, 100 Ark. 477,
140 S.W. 257 (1911). There are many similarities between that

case and the case before us.[1] The basic communication at issue in *Bohlinger* was a letter from a retail credit company to an insurance company which had issued a life insurance policy on Bohlinger. In that case the insurance company did not contend that the statements concerning the plaintiff were not libelous, nor did it contend that the communication to its agents was not a publication. The issue was stated by Judge Frauenthal as follows:

> The sole contention made by him why plaintiff is not entitled to recover is that the undisputed evidence shows that the statements in the report were made and sent on and in connection with an occasion which constituted it a privileged communication, for which an action for libel would not lie.

100 Ark. at 482.

The opinion stated that privileged communications are of two kinds: absolutely privileged and qualifiedly privileged; that an essential ingredient in either case is "malice"; and that such communications are not actionable if made upon such occasions and under such circumstances as to refute the legal inference of malice. *Bohlinger* continued:

> A communication is held to be qualifiedly privileged when it is made in good faith upon any subject-matter in which the person making the communication has an interest or in reference to which he has a duty, and to a person having a corresponding interest or duty, although it contains matters which, without such privilege, would be actionable.

The *Bohlinger* opinion went on to state that the law will not infer malice on occasions when the utterances are appropriate, in the absence of evidence which goes beyond a showing that the statements were false and were published. In other words, the communications are privileged so long as they do not go beyond

---

[1] Although we upheld a directed verdict in that decision and are concerned with a summary judgment in the present case, the reasoning is the same. In the summary judgment cases we consider not only the affidavits and pleadings but all reasonable inferences deducible therefrom. In directed verdict cases it is not necessary to indulge in reasonable inferences from the pleadings and affidavits because the proof has been completed.

what the occasion allowed. At the heart of the *Bohlinger* ruling was the following statement:

> When the facts adduced in evidence are uncontroverted, it becomes the duty of the court to determine whether or not the communication complained of is privileged. The great weight of authority supports the doctrine that the court must decide whether the writing which is claimed to be libelous is one within a qualified privilege. If the court decides that it is, then it will go further and determine whether or not there is any testimony adduced upon the trial which tends to prove malice. If, from the uncontroverted testimony, there is no malice shown, then there exists no cause of action, and it becomes the duty of the court to direct a verdict for the defendant.

100 Ark. at 483-484.

The appellee first argues that there was no publication in the present case. The argument is based in part upon the case of *Farris* v. *Tvedten*, 274 Ark. 185, 623 S.W.2d 205 (1981), where we stated: "In a defamation case a libelous or slanderous statement must be published or communicated to a third person to be actionable." The case held that the fact that a libelous letter was dictated to a stenographer did not constitute publication; nor did the fact that the husband opened the letter addressed to his wife render the statement a publication. A somewhat stronger case relied upon by the appellee is that of *Halsell* v. *Kimberly-Clark Corp.*, 683 F.2d 285 (8th Cir. 1982). The holding in *Halsell* was that until a slanderous statement is communicated outside the corporate sphere or internal organization there is no publication. The Eighth Circuit was applying Wisconsin law at the time.

The appellee also relies upon *Ikani* v. *Bennet & Russell*, 284 Ark. 409, 682 S.W.2d 747 (1985); and *Dillard Department Stores, Inc.* v. *Felton*, 276 Ark. 304, 634 S.W.2d 135 (1982). Both of these cases concerned qualified privilege or immunity. In *Dillard* we held that normally communications within a corporation are entitled to the privilege, but we also held that, although privileged, the immunity can be lost if the utterances go outside the bounds of reason and the purpose for the making of the statements. In *Ikani* we simply held that statements made by

fellow employees were shielded from liability by the qualified privilege. We also considered slander and libel in the case of *Little Rock Newspapers, Inc.* v. *Dodrill*, 281 Ark. 25, 660 S.W.2d 933 (1983), where we reversed because of the failure to show damage to reputation. Since the action by Dodrill was based upon newspaper articles, publication had occurred. Moreover, qualified immunity was not an issue.

 It is essential to tort liability for slander that the defamation be communicated to one other than the person slandered. When the defamation is communicated to another person, it is at that time published within the meaning of the law of slander. Publication and privilege have been either confused or used interchangeably by a number of jurisdictions. However, the great majority of the cases dealing with defamation are not concerned with publication but with privilege. The case before us involves a question of privilege or qualified immunity.

Although the Eighth Circuit Court of Appeals stated in *Halsell* v. *Kimberly-Clark Corporation*, supra, that statements made within the branches of the same corporation did not constitute publication, the court did so in reliance upon the law of the state of Wisconsin. The facts in the *Halsell* case fit perfectly well into the pattern of qualified immunity or privilege. The authorities are in general agreement that qualified privileges must be exercised in a reasonable and responsible manner and for the purpose of furthering the interest of the parties concerned. As previously stated, if the publication or utterance of the defamatory statement has no bearing on the public or private interest which is entitled to protection, then the privilege is lost. *Hines* v. *Shumaker*, supra.

 The defamatory utterances in the present case were not exceptionally harsh, and the record does not demonstrate that they were motivated by spite or revenge. The statements were more in line with statements made by an investor who fears his investment is going down the drain. It was spoken to the members of the board of directors of the corporation. All of the parties present at the time obviously had a legitimate interest in the subject matter of the statements. It was clearly a privileged publication. Neither the allegations in the complaint nor other matters presented to the court, even if established at trial, would

454

support a finding of malice.

In *Bohlinger* we held that when the facts adduced in evidence are uncontroverted it becomes the duty of the court to determine whether the communication is privileged. The opinion further held that if the court decided that the utterance was privileged there must be a decision whether any evidence had been presented to prove malice. The court stated: "If, from the uncontroverted testimony, there is no malice shown, then there exists no cause of action, and it becomes the duty of the court to direct a verdict for the defendant." *Bohlinger* is controlling in the present case. Therefore, we hold that the trial court did not abuse its discretion in granting a summary judgment for the appellee.

Affirmed.