The Honorable Randy Laverty State Senator Post Office Box 303 Jasper, AR 72641
I am writing in response to your request for my opinion on several questions concerning the Searcy County Library ("Library"). You state that the Library is a county owned facility in Marshall, and that it is in the process of building an addition to the existing structure that will be "100% funded by donated trust fund monies."[1] You have presented the following questions in this regard:
 1. Does the source of the funds or the status as a publicly owned property determine if state regulations apply to the construction of a building addition to a publicly owned facility?
 2. Is the Library required to follow Arkansas bidding requirements, including public advertising for general contract bidders, and inclusion of a state minimum wage determination in the bid documents?
 3. If the Searcy County Library does not fall under state bidding regulations because the funding is privately obtained, can the Library Board select the general contractors they want to bid?
4. Can the Library Board negotiate with one general contractor?
RESPONSE
It is my opinion that the answer to your first question is "no." Neither one of these factors determines the applicability of the so-called "public works" law (A.C.A. § 22-9-201 et seq.), which I assume is the focus of your inquiry. The answer to your second question is "yes," in my opinion. Your third and fourth questions are consequently moot.
Question 1 — Does the source of the funds, or the status as a publiclyowned property determine if state regulations apply to the constructionof a building addition to a publicly owned facility?
I am unaware of any authority for the proposition that the source of funding determines whether the requirements under A.C.A. § 22-9-201 etseq. apply to the construction of an addition to a publicly owned facility.[2] As for the public status of the facility, this clearly was not a determinant in Fagan Electric Co. v. Housing Authority,216 Ark. 932, 228 S.W.2d 39 (1950), wherein the court declined to apply the public works law to the construction of a public housing project by a public housing authority. The answer to this question is therefore "no" in my opinion. The applicability of the public works law does not turn on the funding source for the project or the public ownership of the property to be improved.
The pivotal question instead is whether the contract for the construction of the building addition is a contract by "the state, or any agency thereof, any county, municipality, school district, or other local taxing unit. . . ." A.C.A. 22-9-203 (a) (Supp. 2003). See also generally FaganElectric Co., supra; Conway Corp. v. Construction Engineers Inc.,300 Ark. 225, 782 S.W.2d 36 (1989).
Question 2 — Is the Library required to follow Arkansas biddingrequirements, including public advertising for general contract bidders,and inclusion of a state minimum wage determination in the biddocuments?
It is my opinion that the answer to this question is "yes." With regard, first, to bidding requirements, A.C.A. § 22-9-203 requires that bidding procedures be utilized when counties, municipalities, school districts, and certain other entities enter into contracts to make permanent improvements where the estimated costs exceed $20,000.00. This is reflected in subsection (a) of the statute, which provides in relevant part:
 (a) No contract providing for the making of major repairs or alterations, or the erection of buildings or other structures, or for making other permanent improvements shall be entered into by the state or any agency thereof, any county, municipality, school district, or other local taxing unit with any contractor in instances where all estimated costs of the work shall exceed the sum of twenty thousand dollars ($20,000) unless:
* * *
 (2) Any county, municipality, school district, or other local taxing unit shall have first published notice of its intention to receive bids one (1) time each week for not less than two (2) consecutive weeks in a newspaper of general circulation published in the county in which the proposed improvements are to be made or in a trade journal reaching the construction industry.
With regard to the construction project at issue, assuming that the costs are estimated to exceed $20,000.00, the question under § 22-9-203
is whether the contract for the addition to the Searcy County Library is a "contract . . . entered into by the . . . county. . . ." Although I have no specific information regarding the Searcy County Library Board or the particular contract to be entered, the answer to this question is undoubtedly "yes," even if the contract is entered by the Board and not the county judge.[3] As a general matter, libraries fall within those services and facilities which may be provided through county ordinance.See A.C.A. § 14-14-802 (b) (2) (C) (v) (Repl. 1998). The establishment of county libraries is also specifically authorized under A.C.A. § 13-2-401
(Repl. 1999). With regard to matters of administration, a library board may be created pursuant to A.C.A. § 13-2-401 or as a county advisory or administrative board under A.C.A. § 14-14-705. See A.C.A. § 13-2-401 (d) (1). A library board acts upon claims against the "county public library fund," a fund in the county treasury comprised of tax and other county-appropriated funds. A.C.A. § 13-2-404 (a) (1) and (c) (1) (Repl. 1999). It is charged, additionally, with handling funds that remain in its custody pursuant to A.C.A. § 13-2-404 (b) (1), supra at n. 1.
These statutes establish that a library board is a publicly created entity that is properly characterized as an agent of the county when it authorizes payment of claims against the "county public library fund" (id. at (c) (1)), and when it obligates retained funds that have been received by "gift, bequest, devise, or donation or from fees or fines" and that would have gone directly into the county treasury if the board had not been created. Id. at (c) (2). Cf. Op. Att'y Gen. 2000-162
(regarding the public character of library funds that have been retained by the board). Accordingly, it is my opinion that the exercise of authority by, and actions of, the Searcy County Library Board are the same as that of the county for purposes of A.C.A. § 22-9-203. Cf. Op. Att'y Gen. 92-101 (opining that a county hospital board of governors must comply with § 22-9-203). The fact that the Board may be obligating non-tax funds in this instance has no bearing on your question, in my opinion. In letting any contract, the Board acts on behalf of the county, a "local taxing unit" that is specifically included in § 22-9-203.
This conclusion is borne out by other language of A.C.A. 22-9-203 which recognizes that boards, commissions, officers, or other authorities of the local taxing units will be responsible for awarding contracts and opening bids. A.C.A. § 22-9-203 (d). It is also supported by the decision in Conway Corp. v. Construction Engineers, Inc., 300 Ark. 225,782 S.W.2d 36 (1989), which involved a nonprofit corporation that operated the city's utilities. In that case, the lowest bidder for a city construction contract sued the nonprofit, Conway Corp., for rejecting its low bid and awarding the contract to a higher bidder. Although the court never addressed the question squarely, the opinion implies that A.C.A. §§22-9-201 et seq. even applies to a private corporation that acts on behalf of a municipality with regard to its utilities. Surely the court would apply the statute to contracts that are awarded by a county library board, given the character and functions of such a board under the statutes.
With regard to the second part of this question involving the inclusion of a minimum wage determination list in the bid documents, A.C.A. §22-9-308 (Repl. 1998) states in relevant part:
 (a) Before any public body, excluding the Arkansas State Highway and Transportation Department, awards a contract or begins supervised construction for public works, it shall notify the Department of Labor to ascertain the prevailing hourly rate of wages in the county in which the work is to be performed, for each craft or type of worker needed to execute the contract or project.
 (b)(1) The public body shall specify in the resolution or ordinance and in the call for bids for the contract that the minimum prevailing wage rates for each craft or type of worker and the prevailing wage rate for holiday and overtime work shall be paid. [Emphasis added.]
 (2) There shall be included in every specification for work coming under the provisions of this subchapter the minimum prevailing wage rates for each craft or type of worker as determined by the Department of Labor, and it shall be mandatory upon the public body, if it is supervised work, or upon the contractor to whom the contract is awarded and upon any subcontractor under him or her, to pay not less than the specified rates to all workers employed by them in the execution of the contract.
The answer to your question in this regard is therefore "yes." The specifications must include the minimum prevailing wage rates, pursuant to A.C.A. § 22-9-308.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Although I have no other information regarding the management of these funds, I assume from this statement that the trust fund monies were not deposited in the county treasury but rather have been retained by the Board pursuant to A.C.A. § 13-2-404(b)(1) (Repl. 1999), which provides that "[f]unds received by the county public library by gift, bequest, devise, or donation or from fees or fines may remain in the custody of the county library board, if a board has been created, or deposited with the county treasurer for the county public library fund if the county library board so chooses. . . ." Such funds must be used by the Board "for the establishment, expansion, construction, maintenance, and operation" of the library. Id. at (b)(2).
[2] I will discuss in my response to your second question the implications of the funding source in the specific case of the Searcy County Library project, which is the focus of your remaining questions.
[3] The county judge is authorized to enter into "contracts or other agreements to obligate county funds . . ." A.C.A. §14-14-1102(b)(2)(C)(ii) (Repl. 1998) (emphasis added). Although the funds that you have identified as "donated trust fund monies" no doubt constitute public funds (see, e.g., Op. Att'y Gen. 2000-162, infra.), they are not "county funds" for purposes of the county judge's contracting powers under this statute, assuming that they in fact are in the custody of the Library Board pursuant to A.C.A. § 13-2-404(b)(1),supra at n. 1.